**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NEWTOK VILLAGE; NEWTOK VILLAGE COUNCIL, *Plaintiffs-Appellees*, v. ANDY T. PATRICK; JOSEPH TOMMY; STANLEY TOM, *Defendants-Appellants.* | No. 21-35230 D.C. No. 4:15-cv-00009-RRB OPINION |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted November 9, 2021
Seattle, Washington

Filed December 22, 2021

Before:  Ronald M. Gould, Richard C. Tallman, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Indian Law

The panel vacated the district court's orders denying defendants' motion to set aside a default judgment and awarding attorney fees to plaintiffs in an action concerning governance of Newtok Village, a federally recognized Alaskan Native tribe.

One faction of Newtok Village leaders, the "New Council," sued another faction, the "Old Council," seeking an injunction to prohibit the Old Council from representing themselves as the Tribe's legitimate governing body. Following election meetings in 2012, the Department of Interior Bureau of Indian Affairs ("BIA") chose to recognize the New Council as Newtok's governing body, but limited this recognition to Indian Self-Determination and Education Assistance Act ("ISDEAA") contract-related purposes addressing relocation and other tribal services underwritten by federal funds. The district court concluded that it had subject matter jurisdiction, entered a default judgment after the Old Council did not defend the lawsuit, and awarded the injunctive relief the New Council sought. The district court later denied the Old Council's motion to set aside the default judgment and vacate the permanent injunction as void and lacking any federal jurisdictional basis. The district court awarded New Council its attorney fees for successfully defending the Old Council's motion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court erred in concluding that it had subject matter jurisdiction because New Council's claims, as pleaded, did not arise under the Constitution, laws, or treaties of the United States. The panel held that the ISDEAA, which confers jurisdiction on federal district courts to hear disputes regarding self-determination contracts, applies only to suits by Indian tribes or tribal organizations against the United States, and does not authorize an action by a tribe against tribal members. New Council's complaint did not allege interference with, or challenge the validity of, any existing ISDEAA contracts. Rather, New Council's claims sounded in common law tort and conversion and lacked a federal foundation.

The panel held that, under the *Grable* test, no substantial question of federal law was present because no federal issue was necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The panel concluded that New Council's complaint did not specify facts showing that the construction and effect of the ISDEAA or any other federal law was an essential element of the claims for injunctive and mandamus relief.

The panel held that this case concerned an intratribal dispute, nonjusticiable in federal court, because New Council's claims were akin to conversion, fraud, and other common law claims between tribal members. The panel concluded that continuing to enforce the permanent injunction risked the federal court's impermissible involvement in interpreting the Tribe's constitution and laws. Moreover, the BIA was not a party to the action, further supporting the conclusion that there was no inherent and disputed federal question.

The panel held that, because the district court lacked subject matter jurisdiction, the default judgment, permanent injunction, and attorney fees award must be vacated. The panel remanded with instructions for the district court to enter an order of dismissal without prejudice to repleading the complaint if the plaintiffs could establish a federal foundation for their claims.

## COUNSEL

Patricia Ferguson-Bohnee (argued), Indian Legal Clinic, ASU Public Interest Law Firm, Phoenix, Arizona; James J. Davis Jr., Northern Justice Project LLC, Anchorage, Alaska; for Defendants-Appellants.

Michael Walleri (argued), Jason Weiner & Associates PC, Fairbanks, Alaska, for Plaintiffs-Appellees.

## OPINION

TALLMAN, Circuit Judge:

This case requires us to examine the boundary between tribal sovereignty and federal court jurisdiction. The residents of Newtok Village, a federally recognized Alaskan Native tribe, face an existential threat from environmental changes. Severe coastline erosion caused by the rapidly shifting Ninglick River has forced Newtok to relocate its coastal village inland to a new village site. Throughout this historic, challenging, and ongoing relocation, two factions of Newtok Village leaders—the Newtok Village Council (New Council)[1] and the former Newtok Traditional Council (Old Council)[2]—have engaged in an internecine dispute, stemming in part from a series of tribal election meetings held in 2012. At issue is who speaks for the Tribe in accomplishing the move and beyond. The Department of Interior Bureau of Indian Affairs (BIA)[3] chose to recognize the New Council as Newtok's governing body. But the BIA

---

[1] Plaintiffs-Appellees are the Newtok Village tribe and the New Council, which includes President Paul Charles, Vice President George Carl, Member Simeon Fairbanks, Jr., Member Louie Andy, and Member Katherine Charles.

[2] Defendants-Appellants are several Newtok members, including Andy Patrick of the Old Council (which in 2012 was comprised of President Moses Carl, Vice President Walter Kassaiuli, Treasurer Louie Patrick, Secretary Andy Patrick, Member Joseph John Sr., Member Joseph Inakak, and Member George Tom). Defendant-Appellant Stanley Tom was a Tribal Administrator and employee but not an elected Traditional Council member at times relevant to this action. However, for sake of reader convenience, this opinion refers to the Defendants-Appellants generally as the Old Council.

[3] The BIA is not a party to this lawsuit.

strictly limited this recognition to Indian Self-Determination and Education Assistance Act (ISDEAA) contract-related purposes addressing relocation and other tribal services underwritten by federal funds.

In 2015, the New Council sued the Old Council in the United States District Court for the District of Alaska, seeking an injunction to prohibit former Old Council members and tribal administrators from misrepresenting themselves as the Tribe's legitimate governing body to federal, state, and private agencies and persons. The district court concluded it had subject matter jurisdiction to hear the case, entered a default judgment after the Old Council did not defend the lawsuit, and awarded the injunctive relief the New Council sought. Five years later, the Old Council filed a motion to set aside the default judgment and vacate the permanent injunction as void and lacking any federal jurisdictional basis. The district court found that subject matter jurisdiction existed, denied the Old Council's motion, and later awarded the New Council its attorney fees for successfully defending the motion, finding the Old Council had acted in bad faith in filing the motion and in its conduct leading up to the lawsuit.

On appeal, the Old Council continues to assert that this case does not arise under the Constitution or laws of the United States; it therefore seeks dismissal, as well as vacatur of the attorney fees award. Meanwhile, the New Council argues that the judgment and fees award should stand; it responds that the case concerns a simple but especially important federal question for jurisdictional purposes: Who is the federally recognized tribal entity for contracting? Because subject matter jurisdiction remains at issue over the lifespan of a case, we must first confront the question of whether this dispute is justiciable in federal court.

I

A

Newtok Village is a federally recognized Alaska Native tribe. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 86 Fed. Reg. 7554-01, 7558 (Jan. 29, 2021). Newtok's residents are Yup'ik Eskimo and pursue a mostly subsistence lifestyle. *See* H.R. Rep. No. 108-345, at 1 (2003). Yup'ik Eskimo have inhabited the Bering Sea coast for over 2,000 years, and the people of Newtok have occupied their existing village site, which abuts the Ninglick River, since around 1949. *See id.* For decades, the Ninglick River has eroded the village bank, threatening all structures, and the erosion increased exponentially in the past two decades. *See id.*, at 2. Climate change has been a contributing factor to this erosion.[4]

"To save the village and its way of life," H.R. Rep. No. 108-345, at 2, Congress approved a land swap of approximately 12,101 acres of existing Newtok Village lands for approximately 10,943 acres further inland to host a new village site (now called Mertarvik), *see* Land Exchange—Alaska Native Village Corporation, Pub. L. No. 108-129, 117 Stat. 1358 (2003). Relocation efforts to the new village site at Mertarvik are ongoing.

---

[4] *See generally* State of Alaska Dep't of Com., Cmty., and Econ. Dev., Div. of Cmty. and Reg'l Affs., *Relocation Report: Newtok to Mertarvik* (2011), https://www.commerce.alaska.gov/web/Portals/4/pub/Mertarvik_Relocation_Report_final.pdf; U.S. Gov't Accountability Off., GAO-09-551, *Alaska Native Villages: Limited Progress Has Been Made on Relocating Villages Threatened by Flooding and Erosion* (2009), https://www.gao.gov/assets/gao-09-551.pdf.

Many stakeholders are involved with assisting Newtok's relocation, including federal and state agencies, and the Tribe's governing body. Newtok's constitution provides for public elections to be held during October. NEWTOK CONST. art. VIII, § III. The chosen members of the seven-member governing body, the "Traditional Council," serve for two- or three-year terms. *Id.* art. IV, § VI. But for more than seven years prior to October 2012, the Tribe held no election. Newtok's governing body, or "Traditional Council," was the Old Council during those years.

Back in 2005, the BIA began negotiations with Newtok through the Old Council pursuant to the ISDEAA. Those efforts resulted in the Tribe entering into multiple self-determination contracts with the federal government. The Old Council signed various resolutions and authorizations for the contracts, and the BIA continued to recognize the authority of the Old Council on subsequent contract modifications and authorizations.

However, "[i]n the fall of 2012, a tribal election dispute arose, out of which two groups emerged each claiming to be the *bona fide* tribal governing body of the Tribe." The Tribe had circulated a membership petition to hold an election for tribal leaders, and the New Council was allegedly elected at the public election meeting in October 2012. But in early November 2012, "another section of the Tribe [the Old Council] held a public meeting and elected different leaders." BIA representatives met with the New Council later that month, who advised that "two separate tribal councils claimed to represent Newtok and both had held elections ostensibly conducted in accordance with the Constitution on October 12 and November 4, 2012."

The Old Council and the New Council both asserted that they are the legitimate governing body of Newtok and

refused to recognize each other. Each group further
requested that the BIA conduct business only with one and
not the other. In March 2013, the BIA advised both Councils
of BIA policies regarding resolution of such internal tribal
disputes. The BIA informed them that for purposes of self-
determination contracts it "has a duty to determine the
authorized representatives of the governing body of
Newtok" by soliciting information from both Councils to
support their respective positions about their authority to
govern. In response, the New Council provided the BIA
with initial documentation relating to the October 2012
election. The BIA then advised the Tribe on June 10, 2013,
that without an effective FY2013 ISDEAA contract, it would
contract with a third-party nonprofit entity, such as the
Association of Village Council Presidents, to provide
necessary services to Newtok. If that was ineffective, the
BIA informed the Tribe that it would proceed to determine,
based on the documentation submitted, which Council was
the legitimate governing body for ISDEAA contracting
purposes.

Two weeks later, the New Council asked the BIA to
recognize it as the governing body of Newtok Village and
submitted additional evidence, including documentation
relating to a June 14, 2013, meeting which both Councils
attended. At that meeting, Tribal Administrator Stanley
Tom made a motion for Newtok members to confirm which
election they supported. The attending members by majority
vote confirmed the results of the October 12 election,
recognizing the New Council as the governing body of
Newtok Village.

B

On July 13, 2013, after considering the documentation
submitted by the New Council, the BIA declared the New

Council to be the governing body of Newtok Village "for the limited purposes of taking [ISDEAA] contract-related actions . . . for services to Newtok and its members." The BIA found the "continuation of a leadership vacuum would be detrimental to the best interests of the tribe, particularly [during the relocation efforts]," but also stated that "this BIA determination is actually only for purposes of BIA administration of its own programs under the [ISDEAA] . . . ." In its recognition letter the BIA—quoting in part an earlier letter to it from the New Council—further explained:

> As with many tribal internal conflicts, the members of Newtok have the authority to act on their own to resolve these issues . . . "The heart of self-determination is the choice of the tribal community to freely determine themselves, the composition of their leadership."

Therefore, the BIA promised, it "will comply with the direction given, if any, regarding [ISDEAA] contracting by the New Council acting as the Traditional Council."

The Old Council appealed the BIA's administrative determination. The Interior Board of Indian Appeals affirmed the agency's decision on August 6, 2015. *See Newtok Traditional Council*, 61 Interior Dec. 167 (IBIA 2015). However, before the Board had issued its final decision, the New Council sued the Old Council in the United States District Court for the District of Alaska, seeking an order enjoining the Old Council from representing itself as the legitimate governing body and mandating that the Old Council hand over tribal records,

equipment, and property to the New Council. The Old Council did not answer the complaint.

The district court ultimately entered a default judgment and permanent injunction against the Old Council on November 4, 2015. The district court concluded it had subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 (Federal question) and 1362 (Indian tribes). The order permanently enjoins the Old Council and anyone under their control or direction from representing to anyone that they hold office with the Tribe, and permanently enjoins the Old Council from possessing any property of the Tribe and occupying Newtok's council building. The district court later ordered post-judgment relief for the New Council, including issuing a writ of assistance and awarding attorney fees.

The docket remained relatively dormant until June 2020 when the New Council filed a motion with the district court seeking an "order directing Andy Patrick to show cause why he should not be held in contempt for willful violation" of the 2015 default judgment and injunction. The New Council alleged that Defendant-Appellant Andy Patrick sought to circumvent Newtok's COVID-19 pandemic-related travel restrictions by purporting to give the Tribe's approval to a private aviation company for carrying a resident who wished to return to the village. Less than a month later, without a hearing, the district court issued an order holding Patrick in contempt.

On December 29, 2020, over five years after the district court had entered the default judgment and permanent injunction, the Old Council finally retained legal counsel and filed its motion to set aside both decrees under Federal Rules of Civil Procedure 55(c) and 60(b)(4). The motion argued

that the default judgment was void for lack of subject matter jurisdiction.

The district court denied that motion on February 25, 2021, concluding that, based on the ISDEAA, the case presented a federal question because the complaint was not about the issue of tribal leadership but rather alleged "interfere[nce] with contracts between the Tribe's legitimate governing body and the federal government." The court found that the complaint "specifically identifies Newtok Village as a 'federally recognized Indian tribe,' eligible to enter into contracts with BIA" under the ISDEAA. The court further found it "apparent" that, "even without a formal amendment," the complaint against the Old Council "potentially falls under a variety of federal statutes, particularly in light of the fact that such misrepresentation interferes with federal government contracts." The court ultimately left standing the default judgment and permanent injunction.

The district court also granted the New Council's second attorney fees motion on March 26, 2021. The court determined it had equitable power under the federal common law "bad faith exception" to award fees to the New Council as the prevailing party. The court found the Old Council acted in bad faith because they did not "attempt to defend this action for five years, and then moved to vacate default judgment on groundless theories."

The Old Council timely appealed both adverse orders.

## II

We have appellate jurisdiction under 28 U.S.C. § 1291. On appeal, the Old Council challenges the district court's determination that it had subject matter jurisdiction over this

case. The Old Council also asserts that because the district court lacked the power to hear this case it abused its discretion by granting attorney fees to the New Council.

We review de novo the district court's conclusion regarding subject matter jurisdiction, *see Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1470 (9th Cir. 1989), and the denial of the motion to set aside the default judgment as void, *see Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995). We have a continuing duty to ensure we have subject matter jurisdiction over a case. *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004) (amended opinion). We "possess only that power authorized by Constitution and statute," and we must presume "that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up); *see also Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989).

We assess whether the district court abused its discretion in granting attorney fees, *see In re Knight*, 207 F.3d 1115, 1119 (9th Cir. 2000), except that an underlying finding of bad faith is reviewed for clear error, *see Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

III

This case marks another step in our circuit's jurisprudential journey in interpreting federal Indian law. Federal courts are courts of limited jurisdiction, having the power to hear certain cases only as the Constitution and federal law authorize. *See Stock W., Inc*, 873 F.2d at 1225

("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."). A federal basis is thus necessary to permit a federal court to adjudicate a case. Of the two types of federal subject matter jurisdiction—diversity of citizenship and federal question—only federal question jurisdiction is at issue in this appeal.

The Old Council insists that subject matter jurisdiction does not exist because the New Council's complaint fails to plead a federal question on its face, no substantial federal question is raised under the *Grable*[5] Test, and the case concerns a nonjusticiable intratribal dispute. We address each of these contentions in turn.

Article III of the Constitution confers jurisdiction upon federal courts to hear "all Cases, in Law and Equity, arising under this Constitution, the laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ." U.S. CONST. art. III, § 2, cl. 1. This constitutional requirement has a narrower statutory counterpart, providing that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Another jurisdictional statute, 28 U.S.C. § 1362, specifically relates to Indian tribes, stating that federal district courts "shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Sections 1331 and 1362 are now largely

---

[5] *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

duplicative.[6] The "arise under" language is common to both, ultimately mandating the existence of a claim that arises under the Constitution or federal statutory or common law to confer subject matter jurisdiction. *See Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 714–15 (9th Cir. 1980).

"Despite the pervasive influence of federal law in Indian affairs, federal court jurisdiction over cases involving Indians and Indian affairs is not automatic." 1 *Cohen's Handbook of Federal Indian Law* § 7.04[1][a] (Nell Jessup Newton ed. 2017). "In addition, respect for tribal sovereignty will lead courts to exercise section 1331 jurisdiction in cases involving tribal disputes and reservation affairs 'only in those cases in which federal law is determinative of the issues involved.'" *Id.* (quoting *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 589 (8th Cir. 2005)).

In the case now before us—examining the particular facts of the claims asserted and applying the well-pleaded complaint rule—we hold that subject matter jurisdiction has not been shown. The New Council's claims as pleaded simply do not arise under the Constitution, laws, or treaties of the United States.

A

A plaintiff is the master of his complaint and responsible for articulating cognizable claims. Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

---

[6] Section 1362 is limited, however, in that it "does not apply to suits by or against individual Indians." 13D Charles Alan Wright, Arthur R. Miller & Richard D. Freer, *Federal Practice and Procedure* § 3579 (3d ed. 2021, Apr. 2021 Update).

properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). A cause of action "arises under" federal law "only if federal law 'creates the cause of action' or a 'substantial question of federal law is a necessary element' of a plaintiff's well-pleaded complaint." *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052, 1055 (9th Cir. 2019) (quoting *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1383 (9th Cir. 1988)).

But the "mere reference of a federal statute in a pleading will not convert a state law claim into a federal cause of action if the federal statute is not a necessary element of the state law claim and no preemption exists." *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (per curiam). Likewise, under 28 U.S.C. §§ 1331 and 1362, federal question jurisdiction does not exist simply because an Indian tribe or individual is a party. *See Coeur d'Alene Tribe*, 933 F.3d at 1055 (citing *Stock W., Inc.*, 873 F.2d at 1225). "Nor is there any general federal common law of Indian affairs." *Id.* (cleaned up). Indeed, we have held that federal common law does not cover all contracts entered into by Indian tribes because that might open the doors to the federal courts becoming "a small claims court for all such disputes." *Gila River*, 626 F.2d at 714–15; *see also Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 951–52 (9th Cir. 2004).

For instance, in *Peabody Coal*, we addressed whether enforcement of an arbitration award by a non-Indian mining company against the Navajo Nation related to commercial Indian mineral leases approved by the Department of Interior raised a federal question under 28 U.S.C. § 1331. 373 F.3d at 946. We first concluded that the mining company did not bring a cause of action created by federal law, and then proceeded to ascertain whether the mining company's right

to relief necessarily depended on resolution of a substantial question of federal law. *Id.* at 949. Notwithstanding the "extensive federal regulatory scheme" over—and federal approval of—the mineral leases, we held the mining company's complaint presented no substantial federal question because it did not contest the validity of or allege that the tribe breached the underlying coal leases, and the issue regarding an arbitration award could be resolved by general contract law. *Id.* at 951–52.

We looked in part to our decision in *Littell v. Nakai* for support. *See Peabody Coal Co.*, 373 F.3d at 949, 951 (citing 344 F.2d 486, 487–90 (9th Cir. 1965)). *Littell* concerned a tortious interference with contract claim by the Navajo Nation's General Counsel against the Chairman of the Navajo Tribal Council. 344 F.2d at 487. We held the complaint did not present a federal question because the claim required interpreting the contract itself. *Id.* at 488, 490. "[T]he fact that the contract was approved by federal officials was not relevant to the resolution of the parties' dispute." *Peabody Coal Co.*, 373 F.3d at 949 (explaining *Littell*). Thus, under *Peabody Coal* and *Littell*, federal regulation and approval of a contract does not alone implicate a significant federal question. *Cf. Ariz. Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1132 (9th Cir. 1995) (amended opinion) (holding a federal question existed where the dispute over breach of a federally approved lease involved determining whether the Navajo Nation *exceeded its sovereign authority* in regulating employment policies of a non-Indian corporation conducting business on tribal property).

Here, federal law does not create the New Council's causes of action. The New Council sought injunctive and mandamus relief. Specifically, the New Council alleged that

the Old Council has "engaged in a pattern and practice of misrepresenting themselves as the legitimate tribal governing body for Newtok in the solicitation of funds and contracts to which Newtok Village is rightfully eligible" and "[s]uch misrepresentations by the [Old Council] are illegal." The complaint states that the Old Council submitted an ISDEAA contract proposal to the BIA, to which "the New Council objected to the Old Council receiving any funds on behalf of the tribe." But it does not allege that the Old Council wrongfully received any federal funds. The complaint does allege that "[a]s a result of the BIA Area Director[']s decision, the 'New Council' is now the federally recognized governing body of Newtok Village." But none of these assertions and claims actually rely upon federal law. The only reference to *any* federal law in the complaint lies in the facts section:

> As a federally recognized Indian tribe, Newtok Village . . . entered into contracts with the Bureau of Indian Affairs ("BIA") pursuant to the Indian Self-Determination Act, (P.L. 93-638, as amended; 25 USC § 450 et. seq.) ("638"), as well as other state and federal contracts and grants.

This citation alone, however, cannot convert the New Council's claims into a federal cause of action. *See Easton*, 114 F.3d at 982. The ISDEAA is not a necessary element of their claims; these are common law claims at their core. *See Chilkat*, 870 F.2d at 1472–73 (finding no federal foundation underlay the tribe's conversion claims).

To be sure, the ISDEAA confers jurisdiction on federal district courts to hear disputes regarding self-determination contracts. *See* 25 U.S.C. § 5331(a). However, this statute

applies only to suits by Indian tribes or tribal organizations against the United States, *see Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 805–06 (9th Cir. 2001), which is not the case here. The ISDEAA's civil remedy statute does not authorize an action by a tribe against tribal members. *See* 25 U.S.C. § 5331(a); *Demontiney*, 255 F.3d at 808–09.

Moreover, while the district court found it "apparent" that the complaint "potentially falls under a variety of federal statutes," the well-pleaded complaint rule requires that the New Council, as the party asserting jurisdiction, properly plead its causes of action and show on what federal law they are based. *See Kokkonen*, 511 U.S. at 377; *Stock W., Inc.*, 873 F.2d at 1225. This is not to ignore the district court's valid concerns (which we also share) about the Old Council's alleged misrepresentations. But the complaint does not allege interference with, or challenge the validity of, any *existing* ISDEAA contracts. *See Peabody Coal Co.*, 373 F.3d at 950. Rather, the New Council alleged that the Old Council misrepresented its status as the legitimate governing body, seeking money from federal, state, and private agencies, and retained equipment belonging to the Tribe needed "to carry out contractual obligations . . . ."[7] These claims sound in common law tort and conversion and lack a federal foundation.

---

[7] The Old Council points out that the BIA has been working with the New Council since 2015 and that "vacating the 2015 judgment would not impact the BIA's decision to recognize the [New Council] as the governing body of Newtok Village *for the limited purposes of ISD[EAA] contracting*."

We therefore conclude that as currently pleaded federal law does not create the New Council's causes of action.**8** *See id.* at 949; *Chilkat*, 870 F.2d at 1472–74.

Nor is a substantial question of federal law present. The New Council relies heavily upon the "*Grable* Test"—also known as the substantial federal question doctrine—to assert jurisdiction. This doctrine permits federal courts to hear certain claims recognized under state law "that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This standard is met where a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (limiting the doctrine to a "special and small category" of cases). The New Council argues that this case concerns an "obvious federal law question"—that is, who does the federal government recognize as Newtok's governing body? We disagree.

In *Grable*, the Court held that the defendant properly removed a state quiet title action as a federal question when the plaintiff's complaint alleged superior title based on the IRS's failure to give "adequate notice, as defined by federal law"—which was an essential element of the state law quiet title claim—"and the meaning of the federal [tax] statute

---

**8** By way of contrast, we note that Congress enacted a statute that provides criminal penalties for embezzlement, misappropriation, theft, and fraud related to money and property subject to ISDEAA grants and contracts. *See* 25 U.S.C. § 5306.

[wa]s actually in dispute." 545 U.S. at 314–15 ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."). Finding federal jurisdiction proper, *Grable* explained that because other federal laws can potentially give rise to superior claims, federal courts have long exercised federal question jurisdiction over quiet title actions when the "construction and effect of" federal law and relevant facts are "essential parts of the plaintiffs' cause of action." *Id.* at 315–16 (noting the government's strong interest in tax collection).

But *Grable* cannot substitute for the lack of a well-pleaded complaint here. We have held that a state law claim presents a justiciable federal question under *Grable* "only if it satisfies *both* the well-pleaded complaint rule *and* passes the implicates significant federal issues test." *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) (emphasis in original) (cleaned up). Indeed, *Grable* itself confirms that, no matter what, federal question jurisdiction lies only where "it appears from the complaint that the right to relief depends upon the construction or application of federal law." 545 U.S. at 313 (cleaned up).

On these facts, the New Council's argument "fails at the outset" because the complaint does not satisfy the well-pleaded complaint rule. *Cal. Shock Trauma Air Rescue*, 636 F.3d at 543. And, unlike *Grable*, the New Council's complaint did not specify facts showing that the construction and effect of the ISDEAA or any other federal law is an essential element of the claims for injunctive and mandamus relief. *See* 545 U.S. at 314–15. Moreover, the Old Council correctly notes that this case concerns the federal-tribal balance, not the federal-state balance under *Grable*.

To illustrate further, this case is unlike *Coeur d'Alene Tribe*, where the substantial federal question doctrine provided a jurisdictional basis. There, the tribe obtained a tribal court judgment against nonmembers over a property dispute and sought federal recognition and enforcement of the judgment. *Coeur d'Alene Tribe*, 933 F.3d at 1054–55. We reversed the district court's order dismissing for lack of jurisdiction and held "a federal question inhered" in the tribe's complaint because it pressed "the outer boundaries" of its sovereign authority under federal law. *Id.* at 1059–60 (explaining it was "in essence asking the district court to determine whether the Tribal Court validly exercised the powers 'reserved' to it under federal common law"). Here, by contrast, the case concerns common law claims by tribal members against fellow tribal members. The mere mention of the ISDEAA, alleged misrepresentations, and identification of the plaintiffs as a federally recognized tribe and governing body are not enough to establish federal court jurisdiction.

Thus, we also conclude that no substantial federal question exists on the face of the New Council's complaint. *See Cal. Shock Trauma Air Rescue*, 636 F.3d at 542.

B

This case also implicates Newtok's sovereignty. Intratribal disputes are generally nonjusticiable in federal courts. Cautioning against intrusion upon tribal sovereignty, the Supreme Court has said:

> A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community. Given the often vast gulf between tribal traditions and those with

> which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters.

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978) (internal citation omitted). While Congress has broad authority over Indian matters, "the role of courts in adjusting relations between and among tribes and their members [is] correspondingly restrained." *Id.* at 72. The Court in *Santa Clara Pueblo* held the federal court lacked jurisdiction under the Indian Civil Rights Act to adjudicate a challenge by a member against the tribe regarding the validity of the tribal ordinance. *Id.* The Court explained that doing so "may substantially interfere with a tribe's ability to maintain itself as a culturally and politically distinct entity." *Id.*

Several of our own cases concerning intratribal disputes further support our holding here. In *Boe v. Fort Belknap Indian Cmty. of Fort Belknap Rsrv.*, we held that Indian plaintiffs challenging the results of a tribal election for violations of tribal law presented no federal question. 642 F.2d 276, 279 (9th Cir. 1981) (concluding the tribal members' suit did not "involve a dispute or controversy respecting the validity, construction, or effect" of the Indian Reorganization Act). We insisted that the "federal nature of the right to be established is decisive" and determined that the federal court lacked jurisdiction to grant injunctive relief, regardless of the plaintiffs' reliance on the Indian Civil Rights Act and the Indian Reorganization Act. *Id.* at 278–80 (quoting *Littell*, 344 F.2d at 488).

Similarly, in *Chilkat*, our colleague Judge Canby wrote that the district court lacked jurisdiction over a dispute between a tribe and its members based on the face of the

complaint because there was no inherent and disputed federal question. 870 F.2d at 1475–76. The tribe in *Chilkat* brought claims against members and nonmembers regarding the removal of tribal artifacts, alleging violations of the tribal ordinances and 18 U.S.C. § 1163, a federal embezzlement statute relating to Indian tribes. *Id.* at 1471. We held that § 1163 did not create a private right of action and that no "federal foundation" underlay what amounted to conversion claims. *Id.* at 1472–73 ("No construction of federal law is necessary to adjudicate title."). As to the claims regarding the tribal ordinance, *Chilkat* held that those against nonmembers presented federal questions relating to sovereign power but those against tribal members "primarily raise issues of tribal law, and they are the staple of the tribal courts." *Id.* at 1475–76 (rejecting "the view that these federal questions *inhere* in a complaint by a tribe seeking to enforce its ordinance against its own members").

The reasoning in these cases applies here. Similar to *Boe*, the vague reference to the ISDEAA does not really and substantially amount to "a dispute or controversy respecting the validity, construction, or effect" of the statute. 642 F.2d at 279. And like *Chilkat*, the New Council's claims are more akin to conversion, fraud, and other common law claims between tribal members, especially given the ISDEAA's lack of a private right of action against tribes or tribal members for these claims. *See* 870 F.2d at 1472–73. These claims rather stem directly from an ongoing internecine dispute. *See id.*; *see also Santa Clara Pueblo*, 436 U.S. at 72.

The parties also direct us to out-of-circuit caselaw to inform our decision. In one case cited by the Old Council, the Eighth Circuit addressed a dispute involving two competing tribal governing body factions following three

tribal elections. *See Sac & Fox Tribe of the Mississippi in Iowa, Election Bd. v. Bureau of Indian Affs.*, 439 F.3d 832, 835 (8th Cir. 2006). The plaintiffs sought judicial review of the BIA's decision to recognize one group as the governing body under the Administrative Procedure Act (APA), a declaratory judgment that the BIA wrongfully interfered with the elections, and a writ of mandamus requiring the BIA to recognize the older governing body. *Id.* at 834. The Eighth Circuit held federal law was not determinative of the issues because "election disputes between competing tribal councils [are] nonjusticiable, intratribal matters." *Id.* at 835.

We think this reasoning extends here—even assuming that the election itself had been decided—because the ongoing dispute between competing political factions in the litigation is intratribal at its core and presents nothing more than common law claims. Indeed, the New Council sought to enforce the default judgment against fellow tribal members in 2020, notwithstanding the fact that members of the Old Council could potentially be eligible for tribal office but for the injunction. Continuing to enforce the permanent injunction here risks the federal court's impermissible involvement in interpreting the Tribe's constitution and laws. Moreover, the BIA is not a party to this action, further supporting the conclusion that there is no inherent and disputed federal question.

Further, the New Council's argument regarding *Goodface v. Grassrope*, 708 F.2d 335 (8th Cir. 1983), is misplaced. *Grassrope* concerned a dispute over the BIA's decision to not recognize one competing tribal council over another after a tribal election, "as necessary to maintain basic services to the Tribe." *Id.* at 336–37. The Eighth Circuit held that, as a review of a federal agency action under the APA, "the district court possessed jurisdiction only to order

the BIA to recognize, conditionally, either the new or old council so as to permit the BIA to deal with a single tribal government." *Id.* at 339; *see also id.* at 338 ("If the only parties to this action were the 1980 and 1982 councils and the only question presented was one of interpreting the tribal constitution and bylaws, we doubt whether a federal court would have jurisdiction. However, the 1982 council named various BIA officials as defendants in addition to the 1980 council members.").

Here, unlike *Grassrope*, the BIA's decision to recognize the New Council for limited ISDEAA contract-related purposes is not in dispute. Indeed, the New Council's complaint does not seek a determination of its status as Newtok's governing body,[9] nor does it challenge BIA actions related to ISDEAA contracting. The BIA recognized the New Council and has continued to work with those officials. The New Council rather seeks to bring common law claims against other tribal members.

Additionally, the overexpansive scope of relief requested in the New Council's complaint renders the *Grassrope* argument unpersuasive. We agree with the Old Council that—by seeking to enjoin the Old Council from "any representation that they are the governing body of Newtok Village; or otherwise represent Newtok Village"—the New Council in effect sought the district court's determination of Newtok's legitimate governing body for all purposes, not just ISDEAA purposes for which the BIA sought to narrow its recognition.

---

[9] Had the New Council sought a status determination by the BIA, jurisdiction may have been appropriate under the APA. *See, e.g.*, *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016).

The New Council repeatedly asserts that the tribal election dispute had long ceased to the degree there was BIA involvement. But importantly, the BIA's recognition letter was explicitly limited in scope. The BIA stated its 2013 determination was "actually only for purposes of BIA administration of its own programs under the [ISDEAA] . . . ." Determining Newtok's legitimate governing body for all purposes would impermissibly require the federal court to interpret and apply the Newtok constitution and other laws. Moreover, the injunction is permanent and overbroad, effectively prohibiting the Old Council members from *ever* asserting they are the legitimate governing body—which appears to conflict with the Tribe's constitution. That in itself underscores what this case presents: an intratribal dispute. The fact that the BIA contracted with New Council is not germane to the claims the New Council now makes against its fellow tribal members, the Old Council.

## C

In sum, Newtok Village is a "distinct, independent political communit[y], retaining [its] original natural rights in matters of local self-government," and we must respect it as such here. *Santa Clara Pueblo*, 436 U.S. at 55 (cleaned up). Taken together, the New Council's claims are not of a federal nature. They rely primarily on tribal law for resolution. As we have previously said, "[t]he federal nature of the right to be established is decisive—not the source of the authority to establish it." *Chilkat*, 870 F.2d at 1474 (citing *Boe*, 642 F.2d at 279).

We are mindful of the fact that the New Council's allegations raise serious concerns, and the federal government needs to know with whom it contracts, particularly during the ongoing, unprecedented relocation efforts to save Newtok Village and its way of life. To the

extent that there are any continuing allegations of misrepresentation, fraud, or any issues related to existing ISDEAA contracts with Newtok, these complaints may be presented to the United States Attorney.  Or the district court may permit Newtok Village and the Newtok Village Council to replead their complaint if they can better establish a federal basis for federal jurisdiction.  But as currently pleaded, we will not cross the federal-tribal boundary and inject the federal court into these intratribal conflicts.  Doing so would risk eroding tribal sovereignty, *see Santa Clara Pueblo*, 436 U.S. at 72, and potentially open the door to federal courts becoming a forum to adjudicate every intratribal dispute, *see Gila River*, 626 F.2d at 714–15.

As currently framed, this case does not arise under federal law and must therefore be dismissed without prejudice to permit amendment under a proper basis of federal jurisdiction.

IV

Finally, we turn to the March 26, 2021, order awarding the New Council its attorney fees for defending the Old Council's motion to set aside the default judgment.

The issue here is whether the district court had the power to award the New Council its attorney fees in the first instance.  We hold it did not.

Because the district court lacked subject matter jurisdiction over this case, the attorney fees award must be vacated.  *See Branson v. Nott*, 62 F.3d 287, 292–93 (9th Cir. 1995), *abrogated on other grounds by Benavidez v. Cnty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021); *accord In re Knight*, 207 F.3d at 1119; *see also Smith v. Brady*, 972 F.2d 1095, 1097 (9th Cir. 1992) ("[I]f the district court lacked

jurisdiction over the underlying suit, it had no authority to award attorney's fees." (cleaned up)).

V

As pleaded, this case does not arise under federal law. The default judgment, permanent injunction, and the March 26, 2021, order awarding attorney fees are vacated. Further, we remand this case and direct the district court to enter an order of dismissal without prejudice to repleading the complaint if the plaintiffs can establish a federal foundation for their claims.

**VACATED and REMANDED with instructions.**

Each party shall bear its own costs and attorney fees on appeal.